UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAPITALKEYS, LLC,**<br><br>    **Plaintiff,**<br><br>       v.<br><br>**CIBER, INC.,**<br><br>    **Defendant.** | Civil Action No. 11-00975 (JDB) |

**MEMORANDUM OPINION**

Plaintiff CapitalKeys, LLC ("CK") brings this action for breach of contract against defendant CIBER, Inc. ("CIBER"). CK claims that CIBER materially breached its contract with CK when it failed to pay $525,000 due under the contract between the two parties. Am. Compl. ¶ 1. Alternatively, CK claims that CIBER owes restitution for unjust enrichment because it failed to pay for services rendered by CK. Am Compl. ¶¶ 68-80. Now before the Court is [9] defendant's motion for partial summary judgment on the portions of CK's breach of contract claim (Claim I) relating to a contingency fee and CK's unjust enrichment claim (Claim II). For the reasons described below, the Court will grant defendant's motion.

I. Background

In early 2010, CIBER was one of two firms competing for a multi-million dollar contract to provide software products and services to the District of Columbia government. Am. Compl. ¶¶ 13-18. On March 1, 2010, CIBER's management retained CK to perform work on its behalf to help procure the contract with the District. Am. Compl. ¶ 20. The contract between the parties specified that CK would "[g]ain intelligence as to [CIBER's] current procurement status

with the District of Columbia's Government," "educate select decision makers within certain departments . . . as to why [CIBER] is the right choice [to win the contract]," and "[i]nform [CIBER] designated contacts of any corrective actions needed to better gain the scores / votes needed to gain this work and of their standing in the process." Compl. Ex. 1 ¶ 1.

The contract between CIBER and CK specified that CIBER would pay CK a fixed fee of $5,000 per month every thirty days for a six-month period, with a six-month automatic renewal after the initial six-month period had elapsed. The contract also contained the following clause:

> 5. <u>Financial and Other Transactions.</u>  When CK's introductions assist Client in arranging financial funding or other similar transactions, or any mergers or acquisitions, or sales of products, services, or loans, for Client or related companies or management, these efforts will require CK to undertake additional work, in its discretion, e.g. due diligence, and so additional fees will automatically be due and payable in line with the size of the transaction but only payable from the actual closing meaning if you don't proceed and consummate the deal(s), we will not be paid.  These additional fees will only come from deal payments and also from, and upon, any payments resulting from the transaction, at any time during this contract and within 1 year after any termination, with the payments to us to be as we may mutually agree in writing but if we don't for any reason then we will be paid at least 5% of the total deal proceeds including any stock and other benefits from transactions (so that CK will receive at least 5% of the total deal proceeds from Client simultaneously with Client funding or receipt).  CK will also be kept advised and involved in communications and meetings with CK sources.  If, on the other hand, the source is not directly or indirectly supplied by CK, but you involve us to assist you in closing or obtaining the deal, as in the case you use finance materials or plans resulting from our advice, have us on a key conference call with the source and or otherwise materially use our services or relationship to help, then we will be paid and have the same rights as if it was our source except the minimum percentage will be 3% not 5%.  This obligation to us will be during our relationship and for 1 year following any termination.

Id. ¶ 5.

CK's president, who had never worked with CIBER before but according to CK "has significant experience in the field of information technology," was the only employee of CK who worked on the deal between CIBER and the D.C. government. Pl.'s Opp'n Memo. ("Pl.'s Opp'n") [Docket Entry 14] at 5. CK's president researched competing proposals, spoke over the

phone with several D.C. government officials, and provided intelligence to CIBER as to how to improve its bid. Pl.'s Opp'n at 6. CK also contends that it provided unspecified other services to CIBER. Id.

CIBER won the contract with the D.C. government, which CK claims is worth $17,000,000. Am. Compl. ¶ 36. On November 30, 2010, CIBER sent CK an email terminating the contractual relationship. Compl. Ex. C. At that time, CIBER had made monthly payments pursuant to the contract from March through November of $45,000, and CIBER owed payment for the three months remaining in the contract period. Def.'s Mot. for Partial Summ. J. ("Def.'s Mot.") [Docket Entry 9] Ex. 2 at 116. CK sent CIBER an invoice waiving the $15,000 fee for the remaining three months of the contract, but requesting payment of $323,785.32 – three percent of the price of CIBER's contract with D.C. – pursuant to paragraph five of the contract.[1] Compl. Ex. D. When CIBER did not pay the invoice, CK sued in this Court for breach of contract to regain the three percent payment and the remaining $15,000 payment, or, in the alternative, for restitution for unjust enrichment of the difference between the $5,000 per month CIBER paid and the $30,000 per month CK claims it normally charges clients. Am. Compl. ¶¶ 53-64, 73-78; Pl.'s. Opp'n at 20-21. CIBER moved for partial summary judgment, claiming that the unjust enrichment claim as well as the portions of the breach of contract claim relating to a contingency fee fail as a matter of law.

II. Standard of Review

---

[1] At the time of the invoice and the original complaint in this case, CK believed the contract was worth only $10,792,844. The Amended Complaint, however, alleges that CIBER's contract with the D.C. government is actually worth $17,000,000. Hence, CK now argues that 3% of the contract would be $510,000, rather than $323,785.32. See Compl. ¶¶ 36-37; Am. Compl. ¶¶ 36-37.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson, 477 U.S. at 255. A nonmoving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A). If a party fails to support a factual dispute with evidence in the record, "the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. Moreover, "if the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

III.  Discussion

CIBER argues that CK cannot pursue a claim for breach of paragraph five of its contract with CIBER because paragraph five is a contingency fee provision and that the provision is void as a matter of public policy.  CIBER also argues that because an express contract exists, CK cannot pursue a claim for unjust enrichment.

A. Breach of Contract Claim

CK claims that under paragraph five of the CIBER contract, CIBER owes three percent of the value of CIBER's contract with D.C., or $510,000, in addition to interest and fees for nonpayment.  Am. Compl. ¶¶ 35-37. CIBER responds that because the three-percent fee specified in paragraph five of the contract with CK was payable only upon CIBER's successful procurement of the contract with the District of Columbia, the contract clause is void as a matter of public policy.

Since 1864, the Supreme Court has held that the payment of contingent fees to third parties for the purpose of securing government contracts or sales violates public policy.  See Tool Co. v. Norris, 69 U.S. (2 Wall.) 45, 55 (1864).  In doing so, the Court reasoned that contingent payments "suggest the use of sinister and corrupt means for the accomplishment of the end desired. The law meets the suggestion of evil, and strikes down the contract from its inception." Id.  This prohibition against contingent fees has been codified into a required

warranty against contingent fees on all contracts with both the D.C. and federal governments.[2] See 41 U.S.C. § 254(a) (2006); D.C. Code § 2-303.17 (1995) (codified as amended at D.C. Code § 2-354.16 (2012)).[3]  This warranty provision has resulted in courts within this Circuit invalidating contingent-fee provisions between government contractors and third parties.  See Le John Mfg. Co. v. Webb, 222 F.2d 48, 52 (D.C. Cir. 1955) (interpreting an executive order with similar language predating the D.C. and federal statutes); Markon v. Unicorp Am. Corp., 645 F. Supp. 62, 64-65 (D.D.C. 1986); see also D.C. Code § 2-354(a).

The prohibition on contingent fee contracts contains an exception where the contingent payment is to a "bona fide employee[] or bona fide established commercial or selling agenc[y] maintained by the contractor for the purpose of securing business." D.C. Code § 2-354.16.  To determine whether an agency is a "bona fide established commercial or selling agency," a court should consider factors including (1) whether the agency's fee is "inequitable or exorbitant"; (2) whether the "agency has adequate knowledge of the contractor's products and business" and "other qualifications necessary to sell the products or services on their merits"; (3) whether the contractor and agency maintain a "continuing relationship"; (4) whether the agency has existed for a "considerable period" or is likely to continue in the future; and (5) whether the agency does not confine its selling activities to government contracts.  See The Keefe Co. v. Americable Int'l, Inc., 169 F.3d 34, 36-37 (D.C. Cir. 1999).

---

[2] The Court has not been provided a copy of the contract between the District of Columbia and CIBER, so it cannot determine whether the contract contained the warranty against contingent fees.

[3] The contract at issue operates under the laws of the District of Columbia.  See Am. Compl. Ex. 1 at 8.  Because the D.C. statute prohibiting contingent fees, D.C. Code § 2-354.16, has identical language to the equivalent federal statute, 41 U.S.C. § 254(a), because the District of Columbia's courts have not yet interpreted this provision of the D.C. Code, and because the enacted legislative purpose of the D.C. statute does not provide a contrary interpretation, see D.C. Code § 2-351.01, this Court interprets the D.C. statute to have meaning identical to the equivalent federal statute.

Under this test, CIBER argues that CK cannot be considered a "bona fide established commercial or selling agency," and CK does not rebut this argument. Although CK claims it is aware of the software services business generally, it does not – and on this record cannot – claim to have been aware of CIBER's business or products prior to formation of this contract. The parties also engaged in a contractual relationship that lasted just long enough for CIBER to consummate one contract with a governmental agency. This temporary relationship to secure a single government contract fails to meet the statutory exception. See Le John Mfg. Co., 222 F.2d at 51; see also Bradley v. Am. Radiator & Std. Sanitary Corp., 159 F.2d 39, 40 (2d Cir. 1947) (construing the bona-fide agency exception to apply to "an agent employed generally to drum up business for the contractor but not to an agent employed to procure a specific contract"); Markon, 645 F. Supp. at 65 (invalidating a contingent-fee provision when the contract involved only a single lease transaction).

The question, then, is whether paragraph five of the contract between CK and CIBER is a prohibited contingent fee arrangement. CK argues that the paragraph only requires payment for additional services that it rendered to CIBER in closing the deal; therefore, in CK's view, paragraph five falls outside the restrictions of Norris. Pl.'s Opp'n at 16-17. But CK's argument ignores the structure of paragraph five. Payment for these "additional services" was to be made out of the contract proceeds. Payment was only due if the sale to the D.C. government was completed, and no payment could be due if the sale was not completed. Given those basic facts, it is impossible to construe the provision as anything other than a fee provision contingent on CIBER's successful bid on the government contract regardless of the specific services the payment was tied to. If CK had merely been seeking payment for any additional time and effort its employees expended in attempting to close a deal – regardless of whether the deal was in fact

closed – CK would simply have charged for these additional services, without tying the charges to whether a contract was obtained.

To find that this provision does not contravene public policy because it nominally relates to "additional services" provided in securing the sale, despite the implicit requirement that a sale be made before payment must be rendered, would allow companies to price their services so as to effectively avoid the statutory preclusion against contingent fees in government contracting. This arrangement provides the same "tend[ency] to introduce personal solicitation and personal influence," Norris, 69 U.S. (2 Wall.) at 54, as does a traditional contingent fee contract, because CK had the same financial incentive to influence the D.C. government to award the contract to CIBER regardless of which specific services are paid for by the contingent fee. CK's argument that it did not use improper means in helping secure CIBER's sale to D.C. is beside the point; "the corrupting tendency" of contingent fee agreements, not the actual use of improper means, justifies voiding the agreements. Noonan v. Gilbert, 68 F.2d 775, 775 (D.C. Cir. 1934); see also Markon, 645 F. Supp. at 64-65.

CK contends that even if the Norris precedent would invalidate paragraph five of its contract with CIBER, recent Supreme Court First Amendment jurisprudence, see Citizens United v. Federal Election Comm'n, 130 S. Ct. 876, 898 (2010) (holding that restrictions on independent campaign expenditures by corporations violate the First Amendment), implicitly overrules Norris by prohibiting any restriction on corporate speech expenditures. Pl.'s Opp'n at 17-19. But this Court is bound to follow the directly applicable precedent of Norris until that case is expressly overruled by the Supreme Court. Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (2009) ("If a precedent of the United States Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of

decisions, the court . . . should follow the case which directly controls, leaving to the Supreme Court the prerogative of overruling its own decisions."). This Court also notes that CK's interpretation of Citizens United appears to be too broad. Norris and the D.C. statute in question place no outright restriction on corporate lobbying or even on how much a corporation or individual may pay another to aid in lobbying the government, just a restriction on how the contract between the parties may be structured in an effort to prevent corrupt practices. This is quite different than the generalized ban on corporate speech expenditures forbidden by Citizens United.

Because the portion of paragraph five of the contract between CK and CIBER relating to payment of three percent of the value of the contract between CIBER and the D.C. government is invalid on public policy grounds, this Court will grant partial summary judgment to CIBER on the portion of Count I of CK's complaint relating to breach of contract for nonpayment of that amount.

B. Unjust Enrichment Claim

Arguing in the alternative to its breach of contract claim, CK asserts that CIBER was unjustly enriched during its dealing with CK when it received services it failed sufficiently to pay for. Am. Compl. ¶¶ 69-80. CK claims that CIBER owed a duty to pay CK's "standard and customary rates," id. ¶ 70, that the standard rate CK typically charges clients is $30,000/month, Pl.'s Opp'n at 21, and that CIBER therefore owes the $315,000 difference between the $45,000 CIBER paid and $360,000 for twelve months of services. Id.

In the District of Columbia, a party cannot recover on a claim of unjust enrichment for activities that are covered by an express contract between the parties. Emerine v. Yancey, 680 A.2d 1380, 1384 (D.C. 1996). Because an express contract existed covering all services CK

provided to CIBER, CK is only entitled to recovery as far as the contract provides and may not recover under a theory of unjust enrichment. And to the extent that the contract does not properly grant CK payment for any "additional services" it rendered pursuant to paragraph five of the contract because the payment clause in paragraph five is unenforceable on public policy grounds, CK may not recover on an unjust enrichment theory. "[Unjust enrichment] recovery for performance in return for a promise unenforceable on public policy grounds is forbidden." Cevern, Inc. v. Ferbish, 666 A.2d 17, 22 (D.C. 1995). Accordingly, this Court will grant summary judgment to CIBER on CK's unjust enrichment claim in Count II.

IV. Conclusion

For the reasons explained above, the Court will grant defendant's motion for partial summary judgment under Federal Rule of Civil Procedure 56 and dismiss plaintiff's claims for recovery of the contingency fee and related relief in Count I and all of plaintiff's claims in Count II. A separate order will accompany this opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: July 13, 2012